EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-181-GWU

ARLENE KAY CALDWELL, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

1

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Arlene Kay Caldwell, filed her applications for DIB and SSI on June 22, 2005, alleging disability due to osteoporosis, arthritis, and back pain.  (Tr. 106).  She pursued her case to the hearing level, where an Administrative Law Judge (ALJ) determined on October 25, 2007 that she could perform the full range of medium level exertion and was capable of returning to her past relevant work as a cook, cashier, and housekeeper.  (Tr. 20-2).  The case was then appealed to the District Court level, but after the plaintiff's brief was filed, the Commissioner moved

for entry of judgment and a remand of the case for additional consideration under Sentence Four of 42 U.S.C. § 405(g). (Tr. 389-90). The undersigned granted the Commissioner's motion. Caldwell v. Astrue, No. 6:08-237-GWU (E.D. Ky. March 4, 2009). (Tr. 387-8).

In remanding the case to the ALJ, the defendant's Appeals Council noted that the plaintiff's treating physician, Dr. Brett Muha, had restricted the plaintiff to a greater extent than found by the ALJ, and the ALJ had not provided a rationale for failing to give the treating physician's opinions controlling weight under the provisions of 20 C.F.R. § 404.1527(d) and § 416.927(d) and Social Security Ruling (SSR) 96-2p. (Tr. 385). The Appeals Council noted that all medical source opinions should be evaluated, and if rejected, the ALJ was required to provide a specific reason. The ALJ was also required to fully evaluate the plaintiff's residual functional capacity and include a function-by-function analysis of the plaintiff's work-related abilities. (Tr. 386).

On remand, the ALJ obtained additional evidence from medical sources submitted by the plaintiff, as well as testimony from the plaintiff and from a Vocational Expert (VE). The ALJ determined that Mrs. Caldwell had "severe" impairments consisting of back pain secondary to osteoarthritis and obesity, along with a "non-severe" but medically determinable depressive disorder. (Tr. 372). He asked the VE whether a person of the plaintiff's age of 53, eighth grade education,

and work experience could perform any jobs if she were capable of lifting up to 100 pounds "frequently" and 50 pounds "occasionally," with the ability to sit, stand, and walk eight hours each in an eight hour day, and also had the following non-exertional characteristics.[1]  She: (1) could continuously (over two-thirds of the day) reach, handle, finger, feel, push, and pull with the bilateral hands; (2) could continuously use her feet for the operation of foot controls; (3) could continuously climb ramps and stairs, ropes, scaffolds, and ladders; (4) could continuously balance, stoop, kneel, crouch, and crawl; and (5) could continuously operate at unprotected heights, "operate moving mechanical parts," operate a motor vehicle, tolerate humidity, wetness, dust, fumes, chemicals, temperature extremes, whole body vibration, and noise.  (Tr. 596).  The VE responded that such a person could perform the plaintiff's past relevant work as a housekeeper, cook, and cashier.  (Tr. 597).  On the other hand, if the assessment of Dr. Muha in December, 2009 was applicable, limiting the plaintiff to occasionally lifting 10 pounds and frequently lifting 5 pounds, with less than 90 minutes of sitting, standing, and walking in an eight hour day, and a complete inability to perform any postural activities, the VE testified that there were no jobs the hypothetical individual could perform.  (Tr. 597-8).

---

[1] The ALJ presumably meant to say 100 pounds occasionally and 50 pounds frequently.

On appeal, this court must determine whether the administrative decision is supported by substantial evidence, and that the correct legal standard was applied. Having reviewed the record, the court will reverse the Commissioner's decision and remand the case for further consideration.

The plaintiff, who was diagnosed with osteoporosis by a bone scan in December, 2004 (Tr. 264), as well as with a compression fracture at the L2-L3 level by MRI in January, 2006 (Tr. 192, 313, 463), was placed on light duty due to complaints of musculoskeletal pain in 2005. (E.g., Tr. 168). She was evaluated by a rheumatologist, Dr. Jaya Pampati, on two occasions, and although her sedimentation rate was elevated, the physician found no definite evidence suggestive of acute or active inflammatory arthritis. (Tr. 166-9).

Dr. Mary Ann Domingo evaluated the plaintiff on three occasions in 2005, noting the plaintiff's complaints of pain and stiffness, and "polyarthralgias" involving both hands, the lower back, both knees and hips, and the upper and lower back. (Tr. 319). Her extremities showed a good range of motion, but Dr. Domingo's examinations showed multiple tender points and she diagnosed fibromyalgia. (Tr. 317-18). Further treatment was conducted by her family physician, Dr. Muha. (Tr. 317).

Dr. Muha also noted positive fibromyalgia tender points in April, 2005. (Tr. 207). He prescribed the medications Naproxen (and Glucosamine) for joint pain

8

and Fosamax for osteoporosis. (Id.). In 2005, his examinations continued to show tenderness to palpation and tender points, and he added the medications Elavil, Staflex, and a muscle relaxer. He determined to place her on "light duty" until her response to therapy could be determined. (Tr. 201, 206). Later examinations also showed multiple tender points. (Tr. 195, 199).

Dr. Muha provided a number of brief notes in 2005 and early 2006, variously indicating that the plaintiff should be restricted to light duty, should be placed on medical leave because she was unable to work, and, more specifically, limiting her to work requiring lifting of no more than 10 pounds, allowing her to sit down when needed, and with no repetitive bending or twisting. (Tr. 291-6). It was these reports which were the focus of the Commissioner's request for a voluntary remand.

Evidence submitted after the remand shows that Dr. Muha continued to treat his patient. Although his notes are not always informative, they establish that the plaintiff continued to complain of diffuse pain in her muscles and joints, and right hand, and on more than one occasion, the physician noted swelling in the right hand and tenderness in the joints. (E.g., Tr. 446, 479, 565). There was also somewhat decreased strength in the extremities, "4/5" grip strength, lumbrosacral spine tenderness, and decreased range of motion of the lumbrosacral spine noted in a December 2, 2009 office visit. (Tr. 565). On that same date, Dr. Muha prepared a functional capacity assessment limiting his patient to lifting 10 pounds

occasionally and 5 pounds frequently, standing and walking 30 minutes each in an eight hour day (no more than 5 minutes without interruption), sitting 30 minutes in an eight hour day (no more than 5 minutes without interruption), never performing any postural activities, and having restrictions on handling, reaching, pushing, and pulling (due to hand pain and difficulty with dropping items).  (Tr. 561-2).

In his present decision, the ALJ provided several reasons for discounting Dr. Muha's 2009 report.  Perhaps most significantly, he noted the plaintiff's testimony that she was present when Dr. Muha filled out the form, and her affirmative response to his questions indicating the physician had asked her about her abilities and recorded her answers.  (Tr. 590).  The ALJ concluded from this that the restrictions in the form were not really an independent evaluation and opinion of the treating source.  (Tr. 380). This determination is supported by substantial evidence. A physician's opinion is not entitled to controlling weight if it is based on a claimant's own assessment of his abilities.  Warner v. Commissioner of Social Security, 375 F.3d 387, 391 (6th Cir. 2004).

If the December 2, 2009 assessment were the only opinion by Dr. Muha, the fact that the plaintiff appears to have suggested the restrictions herself would be sufficient reason for rejecting the treating physician.  However, Dr. Muha had been consistently limiting the plaintiff to sedentary level exertion with the ability to sit as

needed and limitations on bending and twisting since 2005.[2] It was these original restrictions that prompted the Commissioner to request a remand. Therefore, the court must turn to an examination of the ALJ's other reasons for rejecting the treating source restrictions.

The ALJ asserted that Dr. Muha's limitations were not supported by acceptable medical evidence and were inconsistent with the evidence as a whole, citing specifically his belief that Dr. Muha's diagnosis of fibromyalgia, for example, was based on the plaintiff's subjective complaints rather than pressure point testing. However, as previously noted, at least some of Dr. Muha's notes reflect testing for fibromyalgia tender points, and he also saw the plaintiff on referral back from Dr. Domingo, who independently found tender points and diagnosed fibromyalgia. The ALJ found no support for the plaintiff's allegation that she would frequently drop objects because there was "nothing" in the medical evidence to support a lack of grip strength. However, Dr. Muha's notes contain several references to arthritic changes in one or both hands, joint tenderness, and at least slightly decreased grip strength, all of which could support the plaintiff's allegation.

In support of his residual functional capacity assessment, the ALJ cited three specific reasons: (1) the opinion of a one-time examiner, Dr. Mark Burns, in 2007;

---

[2] His opinion that the plaintiff was unable to work was a vocational conclusion not entitled to controlling weight.

11

(2) state agency reviewing sources; and (3) the claimant's activities of daily living. The court will examine each of these factors in order.

Dr. Burns performed a consultative examination of the plaintiff, apparently without the benefit of any records to review, and he obtained no independent lab results or x-rays. (Tr. 298). His physical/orthopedic examinations showed no abnormalities at all, and he concluded that the plaintiff could perform heavy level exertion with no non-exertional restrictions. (Tr. 299-308). By contrast, the ALJ rejected completely the opinion of another one-time examiner, Dr. Christa U. Muckenhausen, a neurologist, who also examined the plaintiff in 2007 and who reviewed numerous records including x-rays, an MRI scan, and progress notes from several physicians. (Tr. 276). In addition to noting a somewhat anxious and depressed affect, Dr. Muckenhausen found that the plaintiff had some difficulty performing toe and heel gait, had an unsteady tandem gait, had spinal tenderness and muscle spasms, tenderness in her shoulder, elbow, and wrist joints with possible Tinel's and Phalen's sign at the wrist level, and tenderness in both knee joints with crepitations and decreased range of motion. (Tr. 275). Her diagnoses included osteoporosis, osteoarthritis, fibromyalgia, and bilateral carpel tunnel syndrome, along with depression and anxiety. (Tr. 277). She provided limitations that were fairly consistent with those of the treating source, restricting Mrs. Caldwell to lifting less than 10 pounds occasionally and 3 pounds frequently, less than full-

12

time sitting, standing, and walking, as well as having restrictions on postural activities, reaching, handling, feeling, pushing, and pulling, and environmental limitations.  (Tr. 282-3).[3]

In his first decision, the ALJ stated that he rejected Dr. Muckenhausen's opinion on the grounds that it "was an exam scheduled by claimant's attorney on claimant's behalf [and] appears to be not much more than a repetition of claimant's complaints without much discussion."  (Tr. 21).  As can be seen by the summary of Dr. Muckenhausen's report in the preceding paragraph, it was far from merely a repetition of the plaintiff's subjective complaints.  In the second hearing decision, the ALJ merely stated that Dr. Muckenhausen was not a treating source and her opinion was not entitled to controlling weight (Tr. 380), which is undoubtedly true.  Her opinion is, however, quite consistent with that of the treating physician, which the ALJ was rejecting because it was allegedly inconsistent with the evidence as a whole.  At the same time, the ALJ apparently had no difficulty placing near-complete reliance on the very different one-time examination of Dr. Burns.  It is difficult for a

---

[3]Dr. Muckenhausen also concluded that the plaintiff would have a "seriously limited but not precluded ability" to follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, deal with stresses, and function independently, and would have poor or no ability to understand, remember, and carry out complex job instructions.  (Tr. 284-5).  These restrictions are not contradicted by any examining source, and a non-examining state agency reviewer who opined that the plaintiff did not have a "severe" mental impairment did not have the opportunity to review Dr. Muckenhausen's notes.  (Tr. 209).  The plaintiff has not raised this issue on appeal, however.

reviewing court to follow a rationale of rejecting one consultative examiner because of a lack of a treatment relationship, while giving great weight to another consultative examiner who not only suffers from the same limitation, but who had no prior records or independent testing to aid his review.

Regarding the opinion of the state agency consultants, there is no question that Dr. S. Mukherjee and Dr. Ilse Sillers did not find the presence of any "severe" impairments, but they reviewed the record in September, 2005 and January, 2006, respectively, and did not have the benefit of a review of all of the evidence. Nor did Dr. Mukherjee, who assessed the plaintiff's physical condition, have the opportunity to review and comment on the restrictions given by the treating physician, an important factor in SSR 96-6p. No reviewing consultant ever examined the total record and provided a rationale for disagreeing with Dr. Muha.

Finally, the ALJ opined that the plaintiff's activities of daily living controverted her allegations. (Tr. 378). According to his summary, she lived alone, was "independent in activities of daily living, including household chores, cooking and shopping," was able to attend church, visit with family members, watch television, and use a computer. (Id.). She was able to concentrate on the plot of an hour-long television program, and "use a computer for e-mail and surfing the internet." (Id.). However, the plaintiff's testimony was that she spent most of the day lying around taking it easy, did a little cooking, used paper plates a lot, did do some dusting and

sweeping but sometimes got help, only shopped once a month, went to church every other week, did no visiting, watched television one hour a day and could not keep up with television shows because her mind "went blank," ate out once a month, used e-mail on her computer but did not understand the internet very much, performed no yard work, sometimes had difficulty taking care of her personal needs, could only stand for 5 to 10 minutes comfortably, and had to lie down four times a day.  (Tr. 584-8, 592-3).  Therefore, the ALJ's summary of the plaintiff's admitted activities of daily living was inaccurate.  In any event, as the Sixth Circuit has noted, the ability to perform minimal daily functions such as driving, cleaning, laundry, reading, and watching the news is not comparable to performing typical work activities.  Rogers v. Commissioner of Social Security, 486 F.3d 234, 248 (6th Cir. 2007), citing 20 C.F.R. § 416.921(b).

The administrative decision is clearly not supported by substantial evidence.  The plaintiff urges that the case be remanded for an award of benefits, rather than for more administrative consideration under Sentence Four of 42 U.S.C. § 405(g).

Generally, the Commissioner's decision to deny benefits can be reversed and benefits awarded "if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking."  Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).  "The fact that the Commissioner has had two opportunities to deny Plaintiff benefits in a legal

fashion–and has still failed to do so–is a factor this Court can consider, along with the Plaintiff's age and the significant delays involved." Donahue v. Massanari, 166 F.Supp.2d 1143, 1149 (E.D. Mich. 2001); accord Colwell v. Gardner, 386 F.2d 56, 74 (6th Cir. 1967). In Donahue, the court observed that Congress had added limitations on remands under Sentence Six of §405(g) "to speed up the judicial process so that these cases would not just go on and on and on." Id. (citation and internal quotation marks omitted). While these specific limitations do not apply to Sentence Four remands, see Melkonyan v. Sullivan, 501 U.S. 89, 111 (1991), "the Congressional policy behind those 1980 amendments to [S]entence [S]ix can help to inform [the court's] judgment where the Commissioner has already been provided an opportunity to correct an error and years have passed and there are still errors in the administrative record." Donahue, 166 F.Supp.2d at 1150.

While this court is very concerned about the continued delays in this case, which has been pending since the plaintiff filed her applications in 2005, the evidence in its present state does not provide "overwhelming" proof of disability as contemplated in Mowery. The existence of fibromyalgia tender points as found by Dr. Muha and Domingo could support Dr. Muha's restrictions, but the treating physician did not base his most recent set of restrictions on fibromyalgia. Therefore, it is possible that under some circumstances the evidence could be interpreted as supporting a finding of not disabled; e.g., following a review of the

record by a medical professional with access to <u>all</u> of the evidence and who clearly explains the reasons for his or her conclusions per Social Security Ruling 96-6p.

Accordingly, the decision will be remanded for further consideration.

An appropriate judgment and order will enter this day.

This the 23rd day of March, 2011.

Signed By:

<u>G. Wix Unthank</u>

**United States Senior Judge**